# Richmond.

## JOHNSON v. BARHAM, JUDGE.

### MARCH 14, 1901.

### Absent, Whittle, J.*

1. STATUTES—*Enrolled Bill—Printed Acts—Conflict.*—In case of conflict between the enrolled bill and the published act, the enrolled bill is the best and controlling evidence of the legislative intent.

2. CONSTRUCTION OF STATUTES—*Construction—Interpolating Words.*— Courts cannot, by construction, interpolate into statutes words which do not appear there, when such interpolation is not plainly deducible from the context or other portions of the act, and when the omission would not render the act incongruous or unintelligible, nor lead to absurd results.

3. NEWPORT NEWS—*Charter — Police Justice — Removal — Appeal.*—The charter of the city of Newport News, as amended by an act approved January 17, 1900, does not give the chief of police of said city, upon removal, a right of appeal to the Corporation Court of said city. Acts 1899-1900, page 70.

4. CHANCERY JURISDICTION—*Title to Office—Prohibition.*—A court of chancery has no jurisdiction to try a question of title to an office which has been passed upon by competent authority from whose judgment there is no appeal, and the attempt to exercise such jurisdiction will be restrained by a writ of prohibition.

Original application for a writ of *prohibition* to the Corporation Court of the city of Newport News.

*Prohibition awarded.*

The opinion states the case.

*Wyndham R. Meredith* and *W. H. Sands,* for the petitioner.

*Argued before Judge Whittle qualified.

*O. D. Batchelor*, for the respondent.

KEITH, P., delivered the opinion of the court.

By the 62d section of the charter of the city of Newport News, it is provided that the Police Department of that city shall be under the control and management of a Board of Police Commissioners, which shall consist of three discreet citizens, appointed by the mayor, and confirmed by the council. This board was authorized to " establish, promulgate, and enforce proper rules, regulations, and orders for the government and discipline of said police force; and the said board shall have the power to compel the production of papers and the attendance of witnesses by the issue of the proper process therefor: provided, that such rules, regulations, and orders shall not in any way conflict with any ordinance of the City Council or any of the provisions of this act, or the constitution and laws of this State or of the United States; nor shall the said board make any expenditure or incur any expense without consent of the City Council." Thus the section read until January 17, 1900, when it was amended by interpolating after the words "United States," the following: "And provided further that in case of the removal of the Chief of Police he shall have the right to appeal from the decision of the board to the corporation of the said city." In the act as printed the word "court" follows "corporation," so that the printed act provides "for the right of appeal from the decision of the board to the Corporation Court of the said city"; but in the enrolled bill, as appears from a certificate of the Keeper of the Rolls of Virginia, the word "court" does not appear. The board, in the exercise of the power conferred upon it, preferred charges against the Chief of Police, S. J. Harwood, summoned him to appear before it, and, after a full hearing, entered an order removing him, and appointed Thomas A. Johnson in his stead. Harwood noted an appeal to the Cor-

poration Court of the city of Newport News, and moved that court to docket his appeal, but that motion appears not to have been as yet acted upon, and is still pending in that court. Harwood also filed a bill in equity in the Corporation Court, in which he sets out the proceedings before the Board of Police Commissioners; charges that his removal was the result of a predetermined purpose on the part of the mayor in which the board co-operated. The bill charges many violations of duty upon the part of the mayor and each of the Board of Commissioners; that they connived at the illegal sale of intoxicating liquors; that they appointed special police officers over the protest of the Chief of Police; that these officers, when discharged by him in pursuance of his duty, were reappointed, though notoriously unfit for their positions; that by their rules and regulations they encouraged the commission of crime, and in every way obstructed the arrest and conviction of criminals; that the mayor, A. A. Moss, in November, 1900, preferred false charges against him before the board, well knowing that he could not maintain the same, and a pretended trial was had on the charges so preferred which ended on the 18th of December, and the "said board, desiring time to consider of their judgment, declared and promised complainant that judgment would not be rendered until Saturday, the 22d day of December." In disregard of this agreement, and in the absence of his counsel, he avers that on the 19th of December the judgment of dismissal was rendered, and a copy forwarded to his counsel, who were then absent from the city.

Without going further into the details of the charges of the bill, its prayer is that the Board of Police Commissioners, and Johnson, appointed by them as Chief of Police, may be made parties defendant; that they may be enjoined from interfering with complainant in the discharge of his duties and the functions of his office as Chief of Police of the city of Newport News pending the prosecution and determination of his said appeal,

and that defendant, T. A. Johnson, may be restrained and enjoined from acting as such Chief of Police under his pretended appointment aforesaid.

Upon this bill an injunction was awarded, and at a later day an amended and supplemental bill was filed in which A. A. Moss, the mayor, is made a party, and an injunction awarded against him.

To the original and amended and supplemental bills, the defendants demurred, and the court, overruling the demurrer, decreed that "it being suggested by the defendants that the injunction orders heretofore signed have been construed to prohibit and restrain the mayor and the Board of Police Commissioners of the city of Newport News from discharging the duties imposed upon them by law, therefore the said orders are modified and enlarged so as to declare that the true purpose, intent and meaning are to prohibit and restrain the said defendants from treating the order of the said Board of Police Commissioners attempting to remove said complainant from the office of Chief of Police as final, operative, and effective to remove him from the said office, and to require them to continue to recognize him as Chief of Police of the city of Newport News, notwithstanding such order; but the said injunction orders are not to be construed to interfere with or restrain them, or either of them, from the exercise of the lawful functions, duties and powers vested in them by law for the performance of their public duties according to law."

Thereupon Johnson, the newly appointed chief of police; Moss, the mayor of the city, and the Board of Police Commissioners, applied to this court for a writ of prohibition to the Corporation Court to forbid it to entertain the appeal from the judgment of the Police Board removing S. J. Harwood, and prohibiting the said court sitting as a court of chancery, to entertain the bill filed by Harwood against Wilson and others, defendants.

We shall consider but one point presented in the argument. As we have seen, by the enrolled bill, it is provided that "in case of the removal of the Chief of Police he shall have the right of appeal from the decision of the board to the corporation of said city." The act, to repeat what we have already said, as published, inserts the word "court" after corporation, thus giving the right of appeal from the decision of the board to the Corporation Court of said city. The enrolled bill is the best and controlling evidence of the legislative intent. Are we authorized, under the circumstances of this case, to make the interpolation which is suggested?

In *Hutchins* v. *Commercial Bank of Danville*, 91 Va. 68, it is said: "The omission of the word 'not' at the point indicated makes the whole act incongruous and unintelligible, while, with that word incorporated, it is easily understood, clear, and makes the whole act harmonious. It is apparent that the omission was an inadvertence. To adopt a literal construction of the act, as it stands, would lead to absurd results; and we cannot suppose the Legislature to have intended such results. We appreciate the danger, and consequently the great caution to be exercised by courts, in construing statutes, not to add to or take from them one jot or tittle, except in cases where the duty is plain, in order to give an intelligent effect to the statute, and thereby carry out the manifest intent of the Legislature. It will be observed that in this case the Legislature manifested its intention by having the word 'not' incorporated in the original act, as shown by the enrolled bill."

The propriety of the insertion of the word in that case is clearly demonstrated in the opinion which is supported by abundant authority, and in this case we may well believe that the Legislature intended to give an appeal to the Corporation Court, but there is nothing in any other part of the statute. which throws any light upon that intention, and we cannot say that the purpose to do so is plainly deducible either from the

context or other portions of the act.  Suth. in Stat. Con., sec.
261.  Nor would the act be rendered incongruous or unintelligi-
ble by the omission of the word "court"; nor would its omission
lead to absurd results.  It is safer in a case which admits of
doubt, where the court finds itself at all involved in conjecture
as to what was the legislative intent, that the particular object
which may reasonably be supposed to have influenced the Legis-
lature in the particular case should fail of consummation than
that courts should too readily yield to a supposed necessity, and
exercise a power so delicate, and so easily abused, as that of
adding to or taking from the words of the statute.  In such a
case, as has been said by courts in a different connection, "to
doubt is to be resolved."

It would follow from what we have said that no jurisdiction
has been conferred upon the Corporation Court to entertain an
appeal from the order of the Board of Police Commissioners
removing S. J. Harwood from the office of Chief of Police; but
it does not appear that the petitioners here have ever objected
to the exercise of jurisdiction by that court.  Whether or not a
writ of prohibition will issue until there has been an objection
made in the court whose assumption of jurisdiction is sought to
be prohibited is a controverted question, and need not be here
decided.

In the chancery proceeding there was a demurrer to the bill
by which the jurisdiction of that court was challenged.  Without
deciding how far a court of chancery would have been justified
in interfering to protect the right, or supposed right, of S. J.
Harwood pending the determination of his appeal from the
judgment of ouster rendered against him, it is clear that the
chancery court has no jurisdiction to try the question of title
which has been passed upon by competent authority from whose
judgment there can be no appeal.

We are therefore of opinion that the writ of prohibition should

issue to the Hustings Court of the city of Newport News, sitting as a court of chancery, forbidding it to take jurisdiction in the case therein pending of *Harwood* v. *Johnson & als.*, and that the petitioners recover their costs in this behalf expended.

*Prohibition awarded.*