## CIRCUIT COURT OF THE CITY OF RICHMOND

Confrere Club of Richmond, Inc.

v.

City of Richmond

September 16, 1988

Case No. N-6178-4

By JUDGE RANDALL G. JOHNSON

This is an appeal by the Confrere Club of Richmond, Inc., of a 180-day suspension of its bingo permit imposed by a hearing officer of the City of Richmond's Department of Finance on June 19, 1987. The suspension was based on alleged violations of certain accounting and reporting requirements of City ordinances, and of the "Bingo Accounting Guide," a set of rules and regulations governing accounting and reporting procedures developed by Richmond's City Auditor. By letter dated March 7, 1988, the court informed the parties that while it was of the opinion that appeals such as this one are properly limited to a review of the administrative record (*see State Board of Health v. Godfrey*, 223 Va. 423, 290 S.E.2d 875 (1982)), the lack of a transcript of the proceedings below in this case prevented the court from making the necessary review here. Accordingly, a *de novo* hearing was held on July 8, 1988, at which hearing evidence was presented by both parties. At the conclusion of the evidence, counsel were requested to submit written briefs addressing the following issues which were raised by Confrere during the hearing:

1. Whether the Council of the City of Richmond may delegate to the City's Director of Finance the power to suspend or revoke bingo permits;

2. If City Council may delegate the power to suspend or revoke bingo permits to the Director of Finance, may the Director further delegate such power to a hearing officer within his department; and

3. Whether the City of Richmond may require compliance with the "Bingo Accounting Guide."

The court has now considered the brief submitted by the parties and has reviewed the evidence introduced at the hearing. Because the court concludes that City Council may not lawfully delegate the power to suspend or revoke bingo licenses to the Director of Finance or any other administrative officer, and because the evidence is clear that the suspension of Confrere's permit here was made upon such delegation, the suspension of Confrere's permit must be vacated. This conclusion is based on the legislative history and specific language of the state statutes dealing with bingo games in the Commonwealth.[1]

At the outset, it must be recognized that the power to regulate gambling in the Commonwealth rests with the General Assembly, and any ordinance or regulation of a city or other locality which is inconsistent with a state gambling law is invalid. *See Allen v. Norfolk*, 195 Va. 844, 80 S.E.2d 605 (1953). The state laws relating to bingo games are located at §§ 18.2-340.1 through 340.14 of the Code of Virginia. Sections 18.2-340.10 and 340.12 deal with suspensions and revocations of bingo permits. Those sections provide, in pertinent parts, as follows:

Section 18.2-340.10. *Denial, suspension or revocation of permit; penalties. The governing body* of such political subdivision where a permit was issued may deny, suspend or revoke the permit of any organization found not to be in strict compliance with the provisions of this article.

---

[1] The parties stipulated at the hearing that the suspension imposed by the hearing officer on June 19, 1987, had not been enforced in light of Confrere's appeal, and the court then formally stayed enforcement of the suspension pending its decision.

Section 18.2-340.12. *Hearings and appeals.* No permit to conduct bingo games or raffles shall be denied, suspended or revoked except upon notice stating the proposed basis for such action and the time and place for a hearing thereon. After a hearing on the issues, the *local governing body* may refuse to issue or may suspend or revoke any such permit if it determines that the organization has not complied with the provisions of this article. Any organization aggrieved by the decision of the local governing body may appeal such decision to the circuit court. (Emphasis added.)

It is the emphasized portions of the above sections about which the parties disagree. Confrere contends that the power granted to local governing bodies to deny, suspend, or revoke bingo permits may only be exercised by the local governing body itself, and may not be delegated. The City argues that since bingo is a form of gambling, and since gambling affects the safety, morals, decency, and general welfare of the populace, a municipal corporation may, in the exercise of its police power, delegate discretionary powers to administrative and executive officers. *See, e.g. Tinsley v. City of Richmond*, 202 Va. 707, 119 S.E.2d 488 (1961), *appeal dismissed*, 368 U.S. 18 (1961). While the City's position may be a correct general statement of the law, it does not survive scrutiny of the legislative history and specific language of the Code provisions dealing with bingo.

Prior to 1979, the only Virginia statute which specifically addressed the issue of bingo games was § 18.1-335. Under that statute, volunteer fire departments, rescue squads, and other specified organizations were allowed to conduct bingo games. The statute provided, however, that:

No such volunteer fire department, rescue squad or organization shall conduct any bingo game or raffle without first having obtained an annual permit from the governing body of the political subdivision where such volunteer fire department, rescue squad or business office of the organization is located.

With regard to revocation of an existing permit, the same statute provided:

> The governing body of such political subdivision may revoke the permit of any volunteer fire department, rescue squad or organization found to be not in compliance with this section . . . .

As can be seen, it was the "governing body" which was charged with the responsibility of issuing *and* revoking permits under the pre-1979 statute.

In 1979, § 18.2-335 was repealed. Enacted in its place was Article 1.1 of Chapter 8 of Title 18.2 (Crimes Involving Morals and Decency), §§ 18.2-340.1 through 18.2-340.12.[2] Significantly, while the authority to revoke existing permits, as well as to deny or suspend permits, was again vested in the local "governing body" (*see* Sections 18.2-940.10 and 18.2-940.12, quoted *supra*), the authority to *issue* permits was modified. Specifically, § 18.2-340.2 provides, in pertinent part:

> Prior to the commencement of any bingo game or raffle by a qualified organization as defined in this article, the organization shall be required to obtain an annual permit from the governing body of each city or county, or any town with a population of more than 2,500 that has adopted an ordinance pursuant to Section 18.2-340.8, in which a bingo game or raffle is to be conducted, *or from a local official, designated by the governing body.* (Emphasis added.)

In addition, other sections of the present statutes also specifically allow action to be taken, or recognize that action is to be taken, by some person or persons other than the local "governing body." Thus, § 18.2-340.3 requires that "[a]ll applications for a permit shall be

---

[2] Two additional sections, Sections 18.2-340.13 and 18.2-340.14 were enacted in 1981 and 1982, respectively.

acted upon by the governing body, *or its designated official*, within sixty days from the filing thereof . . ." and that "[u]pon compliance by the applicant with the provisions of this article, and at the discretion of the governing body *or its designated official*, an annual permit may be issued." (Emphasis added.)

Similarly, § 18.2-340.6 requires that "[c]omplete records of all receipts and disbursements shall be kept and shall be filed annually under oath *with a local official designated by the local governing body*." (Emphasis added.) That same section also allows a "local designated official" to perform unannounced audits and secure records required to be maintained by law.

Finally, § 18.2-340.7 provides that "[a]ll reports filed pursuant to § 18.2-340.6 shall be audited by *a local official designated by the governing body* . . ." and requires a fee for such audit to be paid to the "*local official* who is responsible for the performance of the audit." (Emphasis added.)

On the other hand, several provisions of the relevant Code sections refer *only* to the "governing body" itself, with no reference to a "designated official." For example, Section 18.2-340.2, in prescribing the form to be used in applying for a permit, provides that such form "may be expanded to include any other information desired by the *local governing body*." (Emphasis added.)

Section 18.2-340.6 provides that "[a] *local governing body* may by ordinance require an independent accounting procedure to be followed by the organization." (Emphasis added.) And § 18.2-340.8 allows "[t]he *governing body* of any county, town or city [to] adopt an ordinance, not in conflict with the provisions of this article, for the purpose of regulating any bingo game or raffle within such jurisdiction." (Emphasis added.)

After considering the above, the court is convinced that the differences in those provisions relating to the "governing body" and those provisions relating to the "governing body or a designated official" represent a conscious decision by the General Assembly to differentiate between those functions which it believes can be properly performed by administrative or executive officers, and those which should, or, as in the case of enacting ordinances, *must* be performed only by the governing body itself.

Since suspending a previously-granted permit is one of the functions bestowed by the General Assembly only upon the "local governing body," it may not be delegated by that body. Accordingly, the hearing officer's suspension of Confrere's bingo permit must be vacated.

In light of the court's ruling, no decision is reached on whether the City may require compliance with the "Bingo Accounting Guide." Nor should the court's decision be interpreted as requiring City Council itself to hold the hearing required by Section 18.2-340.12. The only issue decided here is that City Council itself must be the entity to suspend the permit.