## Alexandria

GRANNY'S COTTAGE, INC.

v.

TOWN OF OCCOQUAN

No. 1092-85

Decided January 6, 1987

COUNSEL

Bruce E. Arkema (Rilee, Cantor, Arkema & Edmonds, on brief), for appellant.

Stephen M. Farmer (Farmer & Curran, on brief), for appellee.

OPINION

DUFF, J. — Granny's Cottage, Inc., a construction company, was convicted of five Class 4 misdemeanors under § 4-5 of the Code of the Town of Occoquan for violations of § 119.2[1] of the Uniform Statewide Building Code (U.S.B.C.). The convictions were based upon the Town of Occoquan's contention that from August 1, 1983, units 1, 2, 4, 5, and 6 of 116 Washington Street, Occoquan, Virginia were occupied without a final inspection or Certificate of Use and Occupancy. The trial court held that the violations of the U.S.B.C. were continuing and, pursuant to the Town ordinance, imposed a fine of $20 per day for each violation until July 23,

---

[1] Buildings hereafter altered: A building or structure hereafter enlarged, extended or altered to change from one use group to another or to a different use within the same use group, in whole or in part, and a building or structure hereafter altered for which a certificate of use and occupancy has not been heretofore issued, shall not be occupied or used until the certificate shall have been issued by the building official, certifying that the work has been completed in accordance with the provisions of the approved permit; except that any use or occupancy, which was not discontinued during the work of alteration, shall be discontinued within thirty (30) days after the completion of the alteration unless the required certificate is secured from the building official.

1985, for a total fine of $11,640.

For the reasons hereinafter set forth, we find that the sanctions provided by the ordinance of the Town of Occoquan are in conflict with the sanctions provided in the U.S.B.C. and must yield to it. This issue, together with the other issues argued on appeal, will be addressed in the order presented.

The record shows that in 1981, a building permit was issued to Granny's Cottage, Inc. for work on a building at 116 Washington Street in Occoquan. Later, in 1981, the permit was amended to include extensive changes to the building, including the removal of exterior stairways, the addition of interior stairways, the installment of electric conduits and plumbing, and the placement of fire walls between new apartments. The permit was again amended in 1982. The building design was changed to a condominium and an allowance was requested for further renovation, including the conversion of eight apartment units into six condominiums, the addition of three brick fireplaces, and a two-story porch, and extension of the building by thirty-one feet.

## I. VIOLATION OF SEC. 119.2 OF THE UNIFORM STATEWIDE BUILDING CODE

On October 16, 1984, the Town of Occoquan issued five misdemeanor charges, asserting violations of the Uniform Statewide Building Code. There is a conflict between the parties as to the proper interpretation and application of § 119.2 of the U.S.B.C. The crux of the dispute involves the definition of the word "building" as set forth in Code § 36-97(12)[2] and whether or not the Washington Street structure was occupied during the period of alteration. Granny's Cottage, Inc. maintains that the building was continuously occupied during alteration, and thus that under the U.S.B.C., no occupancy permit was required. The Town contends that the issue is not whether a part of the building was occupied

---

[2] "Building" means a combination of any materials, whether portable or fixed, having a roof to form a structure for the use or occupancy by persons, or property; provided, however, that farm buildings not used for residential purposes and frequented generally by the owner, members of his family, and farm employees shall be exempt from the provision of the Uniform Statewide Building Code, but such buildings lying within flood plain or in a mudslide-prone area shall be subject to flood proofing regulations or mudslide regulations, as applicable. The word "building" shall be construed as though followed by the words "or part or parts thereof" unless the context clearly requires a different meaning.

during the work but whether each of the individual dwelling units was occupied. The evidence in the record indicates that one or more of the individual units was occupied at all times, but all of the units were never occupied at the same time.

The Town relies on the definitions of "building" and "structure" contained in Code §§ 36-97 (12) and (18),[3] respectively, and, in particular, the language stating that these terms "are to be construed as though followed by the words 'or part or parts thereof.' " Thus, the Town argues that under the Code, whenever a part of a building is enlarged, extended or altered, it shall not be occupied until a Certificate of Use and Occupancy has been issued. It is also the Town's position that the exception contained in § 119.2, pertaining to occupancy during renovation, is not applicable because the units had been sold and there was no evidence that Granny's Cottage, Inc. was actively performing any work on the units. The Town further contends that as each condominium unit was completed, a certificate was required before occupancy. The record demonstrates, however, that no such certificates were obtained.

Granny's Cottage, Inc. interprets the language of Code § 119.2 to mean that a preexisting building was being altered; that each of the condominiums units created by the alteration was a "structure;" that the "building" was occupied during the renovation; and that under the statute, it had 30 days after completion to secure the Certificate of Use and Occupancy or to terminate the occupancy. Based upon the trial court's finding that there was work that had not been completed on the building by the date of trial, Granny's Cottage, Inc. argues that the 30-day period had not begun to run, and no occupancy permit was required.

■ If the appellant's argument is carried to its logical conclusion, there would be no need for an occupancy permit as long as

---

[3] "Structure" means an assembly of materials forming a construction for occupancy or use including stadiums, gospel and circus tents, reviewing stands, platforms, staging, observation towers, radio towers, water tanks, trestles, piers, wharves, swimming pools, amusement devices, storage bins, and other structures of this general nature; provided, however, that farm structures not used for residential purposes shall be exempt from the provisions of the Uniform Statewide Building Code, but such structures lying within a flood plain or in a mudslide-prone area shall be subject to flood proofing regulations or mudslide regulations, as applicable. The word "structure" shall be construed as though followed by the words "or part or parts thereof" unless the context clearly requires a different meaning.

any part of the entire building (regardless of how many separate residential units were being constructed) was occupied during renovation and there was *any* work yet to be accomplished on *any* part of the building. Thus, all but one of the condominium units could have been completed, sold, and occupied without the necessity of use and occupancy permits. We do not believe that the General Assembly intended this result. The dominant purpose of the U.S.B.C. is to provide comprehensive protection of the public health and safety. *VEPCO v. Savoy Construction Co.*, 224 Va. 36, 44, 294 S.E.2d 811, 817 (1982). The Town's interpretation of the definition of a "building" as contained in Code § 36-97(12) would further this purpose. Therefore, we hold that under the facts in this record, the court properly found that Granny's Cottage, Inc. was guilty of violations of U.S.B.C. § 119.2.

## II. ALLEGED CONFLICT BETWEEN STATUTE AND ORDINANCE

Granny's Cottage, Inc. argues that the trial court erred in finding five separate offenses, one for each unit in the building. This argument is based on the contention that there was only one building, 116 Washington Street, with six parts (condominiums). For the reasons set forth above, we hold that the correct interpretation of the definition of a "building" makes the Code applicable to each condominium unit constructed within the building. Accordingly, we find no merit to this argument.

Granny's Cottage, Inc. also contends that the trial court erred by applying the Town ordinance, which makes a violation of the U.S.B.C. a continuing one, and enables the Town to impose sanction s far in excess of the penalty permitted by the state statute. We agree.

Granny's Cottage, Inc. received a fine of $11,640 for violations of the U.S.B.C. pursuant to Town ordinance § 4-14, which provides:

Any person, firm or corporation violating a provision of this chapter shall be guilty of a misdemeanor and shall, upon conviction, be fined not less than twenty-five ($25.00), nor more than one-hundred dollars ($100.00). Each day during which erection, alteration, repair or demolition shall occur in violation of the provisions of this chapter shall constitute a

separate offense.

This ordinance is inconsistent with the penalty provision set forth in Code § 36-106, which provides:

It shall be unlawful for any owner or any other person, firm or corporation, on or after the effective date of any Code provisions, to violate any such provisions. Any such violation shall be deemed a misdemeanor and any owner or any other person, firm or corporation convicted of such a violation shall be punished by a fine of not more than $1,000.

The state statute does not provide that each day of violation constitutes a separate offense. Moreover, the statute prescribes a maximum fine of $1,000 for a violation.

Code § 1-13.17 precludes a local governing body from enacting ordinances "inconsistent with the Constitution and laws of the United States or of *this State*." (emphasis added). The Supreme Court has recognized, however, that an ordinance may prohibit an act upon which state law is silent, *Kisley v. City of Falls Church*, 212 Va. 693, 695, 187 S.E.2d 168, 170 (1972), or proscribe conduct already proscribed by state law where the ordinance is not inconsistent with state law. *Wayside Restaurant v. City of Virginia Beach*, 215 Va. 231, 233, 208 S.E.2d 51, 53 (1974). Likewise, if both the statute and the ordinance can stand together, courts are obligated to harmonize them, rather than nullifying the ordinance. *King v. County of Arlington*, 195 Va. 1084, 1091, 81 S.E.2d 587, 591 (1954). Nevertheless, an ordinance may not conflict with state law. *Loudoun County v. Pumphrey*, 221 Va. 205, 207, 269 S.E.2d 361, 362 (1980); *Hanbury v. Commonwealth*, 203 Va. 182, 185, 122 S.E.2d 911, 913 (1961); *Allen v. City of Norfolk*, 196 Va. 177, 180, 83 S.E.2d 397, 399 (1954).

The penalty provision of Town ordinance § 4-14 is inconsistent with existing state law, and as mandated by Code § 1-13.17, cannot stand. This position is also supported by Code § 36-98, which expressly provides that the U.S.B.C. *"shall supersede* the building codes and regulations of the counties, municipalities and other political subdivisions and state agencies." (emphasis added).

We perceive from these statutes a legislative intent to insure a statewide uniform building code that would apply and be enforced in the same manner and with equal results in all of the State's political subdivisions. The penalty provision set forth in Code § 36-106 is an integral part of the U.S.B.C. Thus, we believe that the legislature intended to preclude inconsistent penalty provisions in local ordinances. Also relevant to our inquiry is § 4-5 contained in chapter 4 of the Town ordinance entitled "Buildings, Generally." That section provides that "the Virginia Uniform Statewide Building Code . . . is hereby adopted and incorporated as a part hereof as fully as if set out at length herein." By incorporating the U.S.B.C., chapter 4 provides two internally inconsistent penalty provisions, one contained in § 4-5, (the U.S.B.C. provision providing for a fine of not more than $1,000), and the other set forth in § 4-14 (providing for a fine of not less than $25, nor more than $100, and continuing daily). These inconsistent penalty provisions cannot be harmonized.

Accordingly, we hold that the sanctions imposed pursuant to § 4-14 of the Town ordinance are invalid.

### III. STATUTE OF LIMITATIONS

Finally, Granny's Cottage asserts that all of the warrants should have been dismissed because the prosecution was not commenced within one year of the alleged offense as provided in Code § 19.2-8. That statute provides in pertinent part:

> Prosecution of Building Code violations under Code § 36-105 shall commence within one year of either commission of the offense or discovery of the offense by the owner or by the building official.

The trial court held that the statute of limitations had not run because each day of violation constituted a separate offense. For the reasons set forth above, we hold that violations of § 119.2 of the U.S.B.C. are not continuing ones. Nevertheless, we further hold that prosecution commenced within the applicable limitation period. The record shows that Rufus Sidney Bradbury, the building inspector, did not "discover" the violations until January of 1984 when he concluded his investigation and then notified Granny's Cottage of the offenses. Prosecution began on October

16, 1984, within one year of discovery of the statutory violations. Accordingly, we find that the action was not barred by the statute of limitations.

For the foregoing reasons, the final judgment is reversed to the extent of the sanctions imposed by the court. The case is remanded for sentencing in accordance with the provisions of the U.S.B.C.

*Affirmed in part,*
*reversed in part, and*
*remanded.*

Keenan, J., and Moon, J., concurred.